## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MELISSA REETZ, Individually and on Behalf of All Others Similarly Situated, | ) Case No.: 20-cv-283 |
| | ) |
| | ) **CLASS ACTION COMPLAINT** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **Jury Trial Demanded** |
| UNIFUND CCR, LLC, KOHN LAW FIRM, S.C., and DISTRESSED ASSET PORTFOLIO III, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, ch. 421-427, Wis. Stats. (the "WCA").

### JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendants directed their collection efforts into the District.

### PARTIES

3.      Plaintiff Melissa Reetz is an individual who resides in the Western District of Wisconsin (Dane County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her debts incurred for personal, family, or household purposes, namely a personal credit card.

5.      Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she allegedly engaged in consumer credit transactions – purchases of household goods and services with a personal credit card.

6.      Defendant Unifund CCR, LLC ("Unifund") is a debt collection agency with its principal offices located at 10625 Techwoods Circle, Cincinnati, OH 45242.

7.      Unifund is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      Unifund is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.      Unifund is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10.      Defendant Distressed Asset Portfolio III, LLC ("DAP III") is a foreign limited liability company with its primary offices located at principal offices located at 10625 Techwoods Circle, Cincinnati, OH 45242.

11.      Upon information and belief, Unifund and DAP III are related entities.

12.      Upon information and belief, DAP III purchases and owns consumer debts and Unifund collects those debts on behalf of DAP III.

13.      The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."   15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267-68 (3d Cir. 2019) ("As long as a business's raison d'être is obtaining payment on the debts that it acquires, it

is a debt collector. Who actually obtains the payment or how they do so is of no moment."); *Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018); *Long v. Pendrick Capital Partners II, LLC*, No. 17-cv-1955, 2019 U.S. Dist. LEXIS 44459, at *39-40 (D. Md. Mar. 18, 2019).

14.    Upon information and belief, the primary purpose of Unifund and DAP III's business is purchasing and collecting consumer debts that are in default at the time of purchase. *Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

15.    Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

16.    Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

17.    DAP III is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer credit card account, originally owed to Citibank, N.A. ("Citibank"). Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

18.    The WCA's debt collection chapter applies to all persons collecting consumer debts, including those collecting debts owed to themselves. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

19.    The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

20.    DAP III uses ordinary collection methods such as mail and telephone communications, third-party debt collectors, including Unifund, Kohn Law Firm, and civil lawsuits to collect allegedly defaulted debts that have been assigned to them.

21.    DAP III is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

22.    Defendant Kohn Law Firm, S.C. ("Kohn") is a law firm with its principal offices located at 735 North Water Street #1300, Milwaukee, WI 53202.

23.    Kohn is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

24.    Kohn is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

25.    Kohn is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

26.    A company meeting the definition of a "debt collector" is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir. 2000)).

## **FACTS**

27.    On or about May 10, 2019, Unifund mailed a debt collection letter to Plaintiff. A copy of this letter is attached to this complaint as Exhibit A.

28.    Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

29.    Upon information and belief, Exhibit A is a form debt collection letter used to attempt to collect alleged debts.

30.    Upon information and belief, Exhibit A was the first debt collection letter Unifund mailed to Plaintiff regarding the alleged debt.

31.    Exhibit A includes the following representation which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that a debt collector send within five days of the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

32.    Exhibit A also includes the following representation:

Original Creditor Account Number: ████████ 0651
Original Creditor: CAPITAL ONE BANK (USA), N.A.
Original Creditor Address: 4851 Cox Road, Glen Allen, VA 23060
Current Creditor to Whom the Debt is Owed: DISTRESSED ASSET PORTFOLIO III, LLC
Balance Placed: $1,582.29
Original Creditor Last Payment Date: 06/15/2018

33.    Exhibit A thus identifies the "Current Creditor to Whom the Debt is Owed" as DAP III.

34.    On or about October 18, 2019, Kohn Law Firm ("Kohn") mailed a debt collection letter to Plaintiff regarding the same alleged debt.  A copy of this letter is attached to this complaint as Exhibit B.

35.    Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

36.    Upon information and belief, Exhibit B is a form debt collection letter used to attempt to collect alleged debts.

37.    Upon information and belief, Exhibit B was the first debt collection letter Kohn mailed to Plaintiff regarding the alleged debt.

38.    <u>Exhibit B</u> contains the statutory validation notice that the FDCPA, 15 U.S.C.

§ 1692g, requires that a debt collector send within five days of the initial communication:

NOTICE: This letter communication is from a debt collector. We are attempting to collect a debt. Any information obtained will be used for that purpose. Under the Fair Debt Collection Practices Act, unless you dispute the validity of this debt, or any portion thereof, within thirty days of receiving this notice, we will assume that this debt is valid. If you notify us in writing within the thirty-day period that this debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment (if any), and a copy of such verification or judgment will be mailed to you. Upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

39.    <u>Exhibit B</u> contains the following (handwritten text by Plaintiff):

Re:    Current Creditor to Whom the Debt is Owed: UNIFUND CCR, LLC
       Original Creditor:  CAPITAL ONE BANK (USA), N.A.
       Original Creditor Address:  4851 Cox Road , Glen Allen, VA 23060
       Debtor:  MELISSA REETZ
       Our File Number: ████1603
       Balance Due as of October 18, 2019:  $1,582.29                    $250

40.    <u>Exhibit B</u> identifies the "Current Creditor to Whom the Debt is Owed" as

Unifund.

41.    Looking at <u>Exhibits A & B</u> together, the unsophisticated consumer would not

know which of DAP III or Unifund owned the debt in question.

42.    Notwithstanding any representation that Unifund is the "current creditor,"

Unifund often sues consumers in its own name when it is actually an assignee *for collection* with

respect to consumer debts that are actually owed to its affiliated companies, like DAP III.  *See*

*Unifund CCR Partners v. Shah*, 946 N.E.2d 885, 890 (Ill. 1st Dist. Ct. App. 2011); *Unifund CCR*

*Partners v. Kiseong An*, Consolidated Case Nos. 1-14-0174 and 1-14-0491, 2014 Ill. App.

Unpub. LEXIS 2836, at *13-14 (Ill. 1st Dist. Ct. App. 2014).

43.     A credit card debt like the alleged debt in this case is a "chose in action" that is generally freely assignable.

44.     The owner of a chose in action may transfer the entire chose in action to a third party without retaining any ownership interest, or it may bifurcate title to the chose in action by transferring only "legal" title and itself retain "equitable" title.

45.     If title is bifurcated, the transferee of legal title is an "assignee for collection" but the entity that retains equitable title is still the "creditor" of the debt as that term is generally understood.

46.     Although an assignee for collection may sue in its own name in Illinois, *see Unifund CCR Partners v. Shah*, 993 N.E.2d 518, 520 (Ill. 1st Dist. Ct. App. 2013), it cannot do so in Wisconsin.  *See, Immel v. Cent. Portfolio Control, Inc.*, No. 11-cv-424, 2011 U.S. Dist. LEXIS 123046, at *5-7 (E.D. Wis. Oct. 24, 2011) (collecting cases, discussing Wisconsin's "real party in interest" test, and concluding that "[i]n a collection action, the creditor or assignee is the real party in interest.").

47.     Upon information and belief, either DAP III or Unifund is the "creditor" and has remained the creditor at all times relevant to this action.

48.     Upon information and belief, the discrepancy between Exhibits A & B as to the identity of the creditor is not due to an actual transfer of ownership between Unifund and DAP III.

49.     Plaintiff did not receive any notice of assignment from DAP III to inform her that the debt had been assigned outright to Unifund.

50.     It is not uncommon for debt collectors to incorrectly identify the creditor's servicing agent that placed a defaulted debt with the debt collector as the creditor of the debt.

*See, e.g., Gritters v. Ocwen Loan Servicing, LLC*, No. 14-c-916, 2018 U.S. Dist. LEXIS 63010, at *20-24 (N.D. Ill. Apr. 13, 2018) (finding that debt collection letter falsely identified the creditor as the Nationstar, the servicer of the loan, rather than Freddie Mac, the owner of the debt).

51.    Upon information and belief, the creditor of the debt is, and has been since any assignment from Capital One, DAP III.

52.    Upon information and belief, Unifund, acting as the servicer for DAP III, placed the debt with Kohn for collection.

53.    Upon information and belief, Kohn, using an automated process to merge account information into its form letters, identified the entity that placed the debt with Kohn as the creditor of the debt instead of the entity that actually owned the debt.

54.    Upon information and belief, Exhibit B falsely identifies the creditor as Unifund.

55.    Even assuming the creditor of the account when Exhibit B was mailed was actually Unifund, the unsophisticated consumer would be confused about whether Unifund had actually taken assignment of the debt or was DAP III's servicing agent because Exhibit B does not explain that DAP III actually assigned the debt to Unifund.

56.    Moreover, Exhibit B is hand-signed on behalf of Kohn by "KIRK R. EMICK," an "Attorney at Law."

57.    Upon information and belief, neither Kirk R. Emick, nor any other attorney at Kohn, performed any account-level review of the alleged debt before Exhibit B was mailed.

58.    A Wisconsin Circuit Court Access ("CCAP") search for Kirk R. Emick's Wisconsin State Bar number returns an error message that the "query returned too many results."

9

The Wisconsin State Bar website states that Kirk Emick was admitted to the Wisconsin Bar on May 23, 2016.

59.    CCAP searches for Kirk R. Emick's Wisconsin State Bar number limited to cases filed in September, October, and November 2019 returns the result that Emick is a party attorney in more than 175 cases, 240 cases, and 225 cases filed in September, October, and November 2019, respectively.  Upon information and belief, all of almost all of these cases were filed using standard-form documents and with little or no account-level review by Emick.

60.    Upon information and belief, neither Kirk R. Emick, nor any other attorney at Kohn, reviewed the chain-of-title for Plaintiff's debt before Exhibit B was mailed to determine whether Plaintiff was a candidate for legal action and, if so, the entity that should be identified as the plaintiff in the lawsuit.

61.    Even assuming legal ownership of the debt actually passed from DAP III to Unifund, any attorney who had reviewed account-level detail with respect to the debt would have known that an unsophisticated consumer would be confused by a collection letter that identified Unifund as the creditor without explaining that DAP III had actually assigned the debt to Unifund because Unifund had previously identified itself as a servicer rather than the creditor.

62.    If an attorney had reviewed any account-level detail before Kohn mailed Exhibit B, Unifund, DAP III, and Kohn could, should, and would have known that the unsophisticated consumer would be confused about the identity of the creditor upon seeing that Exhibit B identified Unifund as the creditor of the debt when Exhibit A identified DAP III as the "Current Creditor to Whom the Debt is Owed" and identified Unifund as "a debt collector" who was "servicing" the account on DAP III's behalf.

63.    In light of the confusing and inherently contradictory representations in Exhibits A & B, the consumer would feel threatened with the prospect of false information on her credit report.  *See, e.g. Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. 2010).  The consumer would believe that two separate entities, rather than one, may report derogatory information about the account.

64.    Misrepresenting the identity of the creditor also increases the risk of double-payment.  The substantive information in the section 1692g(a)(1) and (2) disclosures (the amount of the debt and the name of creditor) are intended to deter fraud through overpayment, double-payment, or payment of an invalid or unenforceable debt.  *E.g., Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324-25 (7th Cir. 2017); *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 685-86 (7th Cir. 2017).

65.    Additionally, the conflicting information about the creditor's identity would leave consumers scratching their heads and wondering whether the letter was a legitimate collection effort.  *Janetos*, 825 F.3d at 324-25 (observing that false or confusing account information may signal that the debt collector was not acting legitimately); *Tourgeman v. Collins Fin. Servs., Inc.* 755 F.3d 1109, 1120 (9th Cir. 2014) (same); *Derosia v. Credit Corp. Sols.*, 2018 U.S. Dist. LEXIS 50016, at *9-10 (E.D. Wis. Mar. 27, 2018) (same); *Pardo v. Allied Interstate, LLC*, 2015 U.S. Dist. LEXIS 125526, at *6 (S.D. Ind. Sept. 21, 2015); *Green v. Monarch Recovery Mgmt.*, 2015 U.S. Dist. LEXIS 98765, at *15 (S.D. Ind. July 29, 2015); *Dilallo v. Miller & Steeno, P.C.*, 2016 U.S. Dist. LEXIS 116188, at *6 (N.D. Ill. Aug. 30, 2016) (same); *Walls v. United Collection Bureau, Inc.*, 2012 U.S. Dist. LEXIS 68079, at *5-6 (N.D. Ill. May 16, 2012) (same); *Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *4 (N.D. Ill. Oct. 20, 2011) (same).

66.     Consumers understand that consumer fraud is rampart in the debt buying industry, where even legitimate debts may lead to fraud because they may be sold to more than one purchaser at a time:

> Americans are currently late on more than $600 billion in bills, according to Federal Reserve research, and almost one person in 10 has a debt in collectors' hands.  The agencies recoup what they can and sell the rest down-market, so that iffier and iffier debt is bought by shadier and shadier individuals.  Deception is common.  Scammers often sell the same portfolios of debt, called "paper," to several collection agencies at once, so a legitimate IOU gains illegitimate clones.

https://www.bloomberg.com/news/features/2017-12-06/millions-are-hounded-for-debt-they-don-t-owe-one-victim-fought-back-with-a-vengeance (accessed: March 23, 2020).

67.     The confusion engendered by Exhibits A & B is material because the unsophisticated consumer would be concerned about the possibility of having to pay the same debt twice, even assuming Defendants were not purposefully acting in bad faith.  *Janetos*, 825 F.3d at 324-25; *see also, FTC v. Swatsworth*, 2018 U.S. Dist. LEXIS 142696, at *4 (W.D.N.C. Aug. 22, 2018) ("The loan information contained in the Portfolio that Defendants purchased was falsified. …  No legitimate 500FastCash loans were ever sold to SQ Capital or Defendants.").

68.     As a result of Exhibit B, Plaintiff entered into a payment arrangement with Kohn to pay $226.00 per month until the balance of the same, formerly Capital One account was paid off.

69.     Plaintiff was confused by Exhibits A & B.

### The FDCPA

70.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. Debt collection letters containing alleged misrepresentations of the character, amount or legal status of a debt, inherently create the risk of the kinds of harm the FDCPA was intended to prevent – including that the consumer will

pay the wrong amount, or make a payment toward a debt that is not owed, or even decide to file bankruptcy because the consumer is under the mistaken impression that the debt is larger than it actually is or that the debt will increase rather than remain static over time.  *See* 15 U.S.C. § 1692e(2)(a); *Boucher*, 880 F.3d at 368; *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) (risk of payment resetting the statute of limitations); *Larkin v. Fin. Sys. of Green Bay Inc.,* No. 18-C-496, 2018 U.S. Dist. LEXIS 191305 (E.D. Wis. Nov. 8, 2018) (plaintiff had standing for her claim that creditor misrepresented that it maintained a credit rating for the plaintiff, even when the claim failed on the merits"); *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector [that the debt collector is licensed as a debt collector in Wisconsin] has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (door hangers left at plaintiff's residence caused

plaintiffs to call debt collector); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

71.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e).  Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. See 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

72.     Misleading or confusing representations about the character, amount, or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11

(N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

73.    15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

74.    15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of—the character, amount, or legal status of any debt."

75.    15 U.S.C. § 1692e(3) specifically prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney."

76.    15 U.S.C. § 1692e(8) specifically prohibits: "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

77.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

78.    15 U.S.C. § 1692g(a) states:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the name of the creditor to whom the debt is owed;

79.    The debt collector must make the 15 U.S.C. § 1692g disclosures in a non-confusing manner. *See Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

### The WCA

80.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

81.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett v. Community Credit Plan, Inc.*, 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

82.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); see also § 425.301.

83.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also

competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

84.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. See Wis. Stats. § 427.104.

85.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. See Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

86.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

87.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. Brunton v. Nuvell Credit Corp., 785 N.W.2d 302, 314-15. In Brunton, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). Id.

88.     Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being

authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not."

89.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

90.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

91.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I – FDCPA

92.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

93.    Exhibit A states that Unifund is servicing the debt on behalf of the creditor, DAP III.

94.    Exhibit B states that Unifund itself is the creditor and provides no detail as to DAP III's role with respect to the debt.

95.    Exhibits A & B do not identify the name of the creditor to whom the debt is owed in a non-confusing manner.

96.    Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(3), 1692e(10), and 1692g(a).

## COUNT II – FDCPA

97.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

18

98.     Exhibit B, purporting to be hand-signed by an attorney, misrepresents that an attorney had become meaningfully involved in the collection of the debt.

99.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(3), 1692e(10), and 1692g(a).

## COUNT III – WCA

100.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

101.    Exhibit B, purporting to be hand-signed by an attorney, misrepresents that an attorney had become meaningfully involved in the collection of the debt.

102.    Kohn violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(k).

## CLASS ALLEGATIONS

103.    Plaintiff brings this action on behalf of a Class, consisting of: (a) all natural persons in the State of Wisconsin (b) to whom Unifund sent a collection letter in the form represented by Exhibit A to the complaint in this action which identified DAP III as the "Creditor to Whom the Debt is Owed", and (c) to whom Kohn sent a collection letter in the form represented by Exhibit B to the complaint in this action which identified Unifund as the "Creditor to Whom the Debt is Owed" (d) between March 26, 2019 and March 26, 2020, inclusive, (e) that was not returned by the postal service, (f) and which debt was incurred for personal, family, or household purposes.

104.    The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

105.    There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA and the WCA.

106.    Plaintiff's claims are typical of the claims of the members of the Class.  All are based on the same factual and legal theories.

107.    Plaintiff will fairly and adequately represent the interests of the members of the Class.  Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

108.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

109.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)    actual damages;

(b)    statutory damages;

(c)    attorneys' fees, litigation expenses and costs of suit; and

(d)    such other or further relief as the Court deems proper.

Dated:  March 26, 2020

**ADEMI & O'REILLY, LLP**

By:    /s/ Jesse Fruchter
       John D. Blythin (SBN 1046105)

Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com